UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC T. ORTEGA, | ) Case No. CV 06-4561-OP |
| Plaintiff, | ) |
| vs. | ) MEMORANDUM OPINION AND ) ORDER |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

The Court[2] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[3]

---

[1] Michael J. Astrue, who was sworn in as the Commissioner of the Social Security Administration on February 12, 2007, is substituted as Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 21.)

[3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative
(continued...)

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1)   Whether the ALJ properly considered the opinion of the examining physician;

2)   Whether the ALJ erred in using the grids; and

3)   Whether the ALJ properly evaluated Plaintiff's credibility.

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450,

---

[3](...continued)
Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1452 (9th Cir. 1984).

## III.

## DISCUSSION

**A.   The ALJ Properly Considered the Opinion of the Examining Physician.**

On April 21, 2004, Dr. Harrell Reznick, Ph.D., an examining psychologist, examined Plaintiff and stated that he would experience moderate limitations in his ability to interact with others in the workplace. (Administrative Record ("AR") at 172-77.) Plaintiff contends the ALJ failed to articulate specific and legitimate reasons for rejecting Dr. Reznick's limitation regarding interactions with others at work and failed to recognize the existence of these functional limitations. (JS at 5.) The Court does not agree that there was error.

After reviewing the evidence of record, the ALJ determined that Plaintiff suffered from the severe impairments of a learning disability and degenerative lumbar disc disease with spondylosis. (AR at 18.) She also determined that Plaintiff had the residual functional capacity ("RFC") to lift, push, pull, and/or carry up to twenty pounds occasionally and ten pounds frequently; sit without restriction; stand/walk for up to six hours per work day; and perform no more than simple, repetitive tasks. (Id.) She concluded, therefore, that Plaintiff could perform unskilled light exertional-level work. (Id.)

The law is well established in the Ninth Circuit that to reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons. Even if contradicted by another doctor, the opinion of an examining doctor can only be rejected for "specific and legitimate" reasons that are supported by substantial evidence in the record. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

In this case, Dr. Reznick opined that Plaintiff would experience "mild to

moderate difficulties tolerating ordinary work pressures and moderate difficulties interacting with others in the work place.  He would have moderate to marked difficulties interacting with the general public in a work setting." (AR at 177.) Despite these stated limitations, however, Dr. Reznick also stated that:

> [Plaintiff] would be able to perform simple and repetitive tasks with minimal supervision.  He would be able to perform these tasks with appropriate persistence and pace over a normal work cycle. [He] would be able to understand, remember, and carry out at least simple to moderately complex verbal instructions.  He would also be able to adapt in a satisfactory manner to at least minor to moderate variations in work routine.

(Id.)

The State Agency psychiatrist, Dr. Stone, also assessed Plaintiff's functioning.  Dr. Stone also opined that Plaintiff had a mild degree of limitation in maintaining social functioning and was moderately limited in interacting appropriately with the general public.  (Id. at 208, 211.)  He concluded that Plaintiff was capable of performing "simple tasks away from general public." (Id. at 212.)  Dr. Gaines, the examining psychologist, did not diagnose any psychiatric disorder at all, noting instead "Mild Mental Retardation."  (Id. at 220.)  Dr. Gaines did not give any specific opinion as to any functional limitations.  He did state that Plaintiff would benefit from independent living skills counseling.  (Id.) No physician, including Dr. Reznick, found an unqualifiedly marked limitation in any area of mental functioning.

Where, as here, there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must supplement the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. Maier v. Comm'r of Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir.1998) (per curiam).  Specifically, the ALJ must determine

whether the severity of the claimant's functional limitations are incompatible with the ability to work by ranking the severity of the claimant's deficiencies (none; slight; moderate; marked; extreme) in three different categories (daily living; social functioning; concentration, persistence, or pace), and indicate the number of episodes of decompensation (none; one or two; three; four or more).  20 C.F.R. § 416.920a.  Generally, if the claimant's mental impairment meets part A of a specific listing and the ALJ finds that a claimant's functional limitations are at the extreme or marked level in two of the four categories, then the claimant meets or exceeds the listing.  See, e.g., 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03(B).  The functional limitations are not an RFC assessment, but only are used to assess the severity of a claimant's alleged mental impairment.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34,477 (1996) ("[T]he limitations identified [in the PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.") (emphasis added).

Consistent with the opinions of Dr. Reznick, Dr. Gaines, and Dr. Stone regarding Plaintiff's social functioning, the ALJ specifically found that Plaintiff's "mental impairment is 'severe' because it results in moderate functional limitations under the regulatory 'technique' (20 CFR 404.1520a; 20 CFR 416.920a)."  (AR at 15.)  She also found, consistent with these opinions, that Plaintiff's "nonexertional limitations have no more than a minimal effect on the unskilled light exertional-level job base (SSR 83-10)."  (Id. at 17.)  She concluded that Plaintiff could perform simple, repetitive unskilled[4] tasks at the light level.  (Id. at 18.)   The ALJ's conclusions do not constitute a rejection of Dr. Reznick's

---

[4] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  20 C.F.R. § 416.968(a).

findings.

Based on the foregoing, the Court does not agree with Plaintiff that the ALJ failed to acknowledge the existence of Dr. Reznick's opinions or that she rejected those opinions.  Thus, there was no error.

**B.    <u>The ALJ's Use of the Grid Was Not Error.</u>**

Plaintiff contends the ALJ improperly relied solely on the grids in making her step five determination, and it was error not to take testimony from a vocational expert regarding the impact of Plaintiff's nonexertional limitations on his ability to work.  (JS at 4.)  The Court does not agree.

It is well established that the ALJ may rely upon either the testimony of a vocational expert or by reference to the Guidelines to determine whether a plaintiff can perform work in significant numbers in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999) (<u>citing</u> <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 577-78) (Pregerson, J., concurring) (9th Cir. 1988)).  The Guidelines consist of tables, commonly referred to as "grids," that provide a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." 20 C.F.R. § 404, subpt. P, app. 2; <u>Tackett</u>, 180 F.3d at 1101.  The ALJ may rely solely on the Guidelines when the relevant grid "<u>completely and accurately</u> represent[s] a claimant's limitations. . . . In other words, a claimant must be able to perform the <u>full range</u> of jobs in a given category, i.e., sedentary work, light work or medium work." <u>Tackett</u>, 180 F.3d at 1101.  Where a nonexertional limitation is sufficiently severe so as to <u>significantly</u> limit the range of work permitted by the clamant's exertional limitation, a vocational expert's testimony is necessary.  <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1076 (9th Cir. 2007) (<u>quoting</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 948, 960 (9th Cir. 2002); <u>Bruton v. Massanari</u>, 268 F.3d 824, 827 (9th Cir. 2001).  Such is not the case here.

Social Security Ruling 83-15[5] defines nonexertional impairments as follows:

> Any job requirement which is not exertional is considered nonexertional. A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do.

(Soc. Sec. Ruling 83-15.) Consequently, nonexertional limitations limit the ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); 20 C.F.R. § 404.1569a(c). Nonexertional limitations include difficulty in: functioning because of nervousness, anxiety or depression; maintaining attention or concentration; understanding instructions; seeing or hearing; tolerating physical features of a work setting; and manipulative or postural functions (e.g., reaching, handling, stooping, or crouching). 20 C.F.R. § 404.1569a (c)(1). The severity of the impairment requiring the use of a vocational expert at step five is greater than the severity of the impairment required to find an impairment "severe" at step two of the ALJ's analysis. Hoopai, 499 F.3d at 1077.

Here, as discussed above, the ALJ properly found that Plaintiff's nonexertional impairments, although severe, resulted only in limiting Plaintiff to simple, repetitive tasks. (AR at 18.) Otherwise, his capacity for unskilled light exertional-level work "has not been significantly compromised by his non-

---

[5] Social Security Rulings are binding on ALJs. Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

exertional limitations." (Id.)  Thus, Plaintiff's nonexertional impairment did not significantly limit the range of work permitted by his exertional limitation, and reliance on the grids was proper.  Tackett, 180 F.3d at 1101.

Based on the foregoing, the ALJ properly utilized the grids in the Guidelines to determine that Plaintiff was not disabled.  Thus, there was no error.

### C. **The ALJ Properly Discounted Plaintiff's Credibility.**

The ALJ found that Plaintiff's "subjective complaints are not credible except to the extent they are consistent with the residual functional capacity." (AR at 18.)  Plaintiff contends that the ALJ's articulated reasons for rejecting Plaintiff's testimony regarding his distractibility and inattentiveness are not clear and convincing. (JS at 13.)  Specifically, he contends that the ALJ acknowledged Plaintiff's limitations with activities of daily living yet stated she did not fully believe his allegations of disability because he was able to perform a variety of activities such as walking four miles, driving a scooter or bike, taking out the trash, helping with yard work, washing clothes, vacuuming, preparing meals, and shopping for groceries. (Id. at 12; AR at 16.)  Plaintiff claims the ALJ's reliance on his performance of certain activities of daily living to discredit his testimony is insufficient.  The Court finds no error.

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-47  (9th Cir. 1991).  In assessing a claimant's credibility, an ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  Thomas, 278 F.3d at 958-59 (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating

factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnel, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p;[6] 20 C.F.R. 404.1529 (2005).

Here, the ALJ acknowledged that Plaintiff has the severe impairments of learning disability and "degenerative lumbar disc disease with spondylosis." (AR at 15.) She also provided a number of reasons for discounting Plaintiff's credibility regarding his limitations. Based on the objective record, the ALJ properly concluded that Plaintiff's daily "activities are consistent with an individual who can perform basic work activities within the [determined] residual functional capacity." (Id. at 16.) Plaintiff's daily activities, which conflict with his allegations of disabling back pain and/or his inability to concentrate, are factors an ALJ may consider when determining whether a plaintiff's claim of pain or other symptoms is as constant and as debilitating as claimed. Thomas, 278 F.3d at 958-59; Bunnel, 947 F.2d at 346-47; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities).

---

[6] The Ruling lists factors to be considered such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Ruling 96-7p.

In addition to discussing the breadth of Plaintiff's daily activities, the ALJ noted that there is "no objective evidence of treatment for the claimant's back impairment in the last 3 years." (AR at 16.) Nor did she find any evidence that Plaintiff received any mental health treatment or is taking any pain medications. (Id.) The ALJ noted that Plaintiff's treating physician, Dr. Nagelberg, recommended nothing more than a home and gym exercise program, and consulting physician, Dr. Ella-Tomayo, opined that he still could stand and/or walk up to six hours with normal breaks. (Id.) The ALJ discredited the testimony of Plaintiff's social worker, Ms. Drew, in part because her testimony conflicted with Dr. Reznick's test scores, and in part because she was an "other" source whose testimony is not accorded much weight. (Id.) The ALJ noted that the findings of Dr. Reznick, Dr. Gaines, and the State Agency physician regarding Plaintiff's mental impairments failed to indicate functional limitations beyond those she imposed in her residual functional capacity determination. She restricted Plaintiff to light unskilled work based on the objective evidence in the record (id. at 15-16) and concluded that she "does not find the claimant's subjective complaints to be credible, and they do not support the imposition of additional functional limitations beyond those cited above." (Id. at 17.) In analyzing credibility, the ALJ may properly rely on conflict between the claimant's testimony of subjective complaints and objective medical evidence in the record. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Based on the foregoing, the Court finds that the ALJ's adverse credibility determination was proper because her discussion of Plaintiff's credibility reflects consideration of the factors set forth in Social Security Ruling 96-7p. Further, the reasons given were supported by substantial evidence and were sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective testimony. Thus, there was no error.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: May 23, 2008

/s/ _____
HONORABLE OSWALD PARADA
United States Magistrate Judge